TG/ST

1  Baolin Chen, OSB No. 93232
2  Attorney at Law
   1000 SW Broadway, Suite 2150
3  Portland, OR 97205
   Telephone: (503) 222-3384
4  Email: baolinchen@usworkingvisa.com

FILED '05 MAR 11 15:37 USDC-ORP

5  Of Attorney for Petitioners

6

7

8

9

10            **IN THE UNITED STATES DISTRICT COURT**

11               **FOR THE DISTRICT OF OREGON**

12

13

14  CHINA NATIONAL CHEMICAL                 )
15  CONSTRUCTION CHONGQING CO.      &       )
    CHONGQING PESTICIDE                     )
16  CHEMOINDUSTRY (GROUP)                   )
17      CORP.                               )     CV '05 - 350      ST
                                            )
18              Petitioners,                )     Civil Case No:_____
                                            )
19                                          )     PETITION FOR ORDER
20                                          )     CONFIRMING FOREIGN
                                            )     ARBITRAL AWARD PURSUANT
21                                          )     TO 9 U.S.C. § 207
                                            )
22  SEEDLING,                               )
23  WORLDMODAL NETWORK SERVICES, &          )
    KIT KONG                                )
24                                          )
            Respondents.                    )
25                                          )
26

1 –PETITION FOR ORDER CONFIRMING FOREIGN          CHEN, MU & ASSOCIATES
        ARBITRAL AWARD                           1000 SW Broadway, Suite 2150
                                                    Portland, Oregon 97205
                                         (503) 222-3384 ● FAX (503) 222-7779

Receipt 300002318

Petitioners, China National Chemical Construction Chongqing Co. (hereinafter called Chongqing Chemical) and Chongqing Pesticide Chemoindustry (Group) Corporation (hereinafter called Chongqing Pesticide), allege:

## I.

Petitioner Chongqing Chemical is a corporation organized and existing under the laws of the Peoples' Republic of China, with its principle place of business in Chongqing, China.

## II.

Petitioner Chongqing Pesticide is a corporation organized and existing under the laws of the Peoples' Republic of China, with its principle place of business in Chongqing, China.

## III.

Respondent Seedling was a dissolved corporation, with its principle place of business in Portland, Oregon.

## IV.

Respondent Worldmodal Network Services was a dissolved corporation, with its principle place of business in Portland, Oregon.

## V.

Mr. Kit Kung is a resident residing in the state of New Jersey.

## VI.

Peoples' Republic of China is a party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958.

## VII.

2 –PETITION FOR ORDER CONFIRMING FOREIGN
ARBITRAL AWARD

CHEN, MU & ASSOCIATES
1000 SW Broadway, Suite 2150
Portland, Oregon 97205
(503) 222-3384 ● FAX (503) 222-7779

This proceeding arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, and under Chapter 2 of Title 9, United States Code, and particularly Section 207.  The jurisdiction of this Court arises under Section 203 of Title 9, United States Code.

### VIII.

On April 15, 1994, the two Petitioners signed a certain chemical equipment purchase contract with a U.S. corporation called Brighton Industries Corporation for the purchase price of eleven million dollars.  Under said contract, the Brighton Industries Corporation would apply a loan in the amount of $6,000,500 on behalf of the Petitioners from the American Import and Export Bank.  This loan was to be guaranteed by the Chinese Construction Bank and to be registered with the Chinese National Foreign Currency Management Administration.

### IX.

On August 15, 1996, the two Petitioners and Brighton Industries Corporation signed a supplementary agreement, agreeing that the two Petitioners would only purchase the equipment in the United States in the amount of $3.6 million.

### X.

On November 1, 1999, the Petitioners signed a refund agreement with Brighton Industries Corporation, Beijing Brighton Systems Corporation, and Brighton Technologies Corporation.  In this refund agreement, the parties confirmed that Brighton Industries Corporation still had $2.45 million in its bank account which was owed to the Petitioners. Beijing Brighton Systems Corporation, and Brighton Technologies Corporation undertook the duty to guarantee that said amount would be returned to the Petitioners.

CHEN, MU & ASSOCIATES
1000 SW Broadway, Suite 2150
Portland, Oregon 97205
(503) 222-3384 ● FAX (503) 222-7779

**XI.**

After that, Mr. Kit Kung signed a promissory note, promising that he would guarantee Brighton Industries Corporation to return $2.45 million to the Petitioners.  Mr. Kung also committed his stocks in Brighton Technologies Corporation as collateral.

**XII.**

On April 12, 2001, the Petitioners filed an arbitration petition with China International Economic Trade Arbitration Commission (hereinafter called Arbitration Commission).On March 11, 2002, in the City of Beijing, China, the tribunal of the Arbitration Commission, having held hearings in that city at which both parties' representatives appeared, and after consideration of all the evidence presented at the hearings, made their award in writing, acknowledged it, and delivered it to the parties.  The tribunal ordered Brighton Industries Corporation, Brighton Technologies Corporation and Mr. Kit Kung to pay more than three million dollars.  A copy of the award in Chinese together with a certified English translation is attached, marked Exhibit 1, and made a part hereof.

**XIII.**

Seedling and Worldmodal Network Services later became the successor companies of Brighton Industries Corporation and Brighton Technologies Corporation.

**Wherefore the Petitioner moves:**

    1.     That an order confirming the award against all Respondents;
    2.     That a judgment be entered in conformity therewith;
    3.     That Petitioners be allowed their costs incurred here; and

CHEN, MU & ASSOCIATES
1000 SW Broadway, Suite 2150
Portland, Oregon 97205
(503) 222-3384 ● FAX (503) 222-7779

4.    That Petitioners be awarded such other and further relief as may
be proper.

Dated this _11_ day of March, 2005.

Respectfully submitted,

Baolin Chen
Of Attorney for Petitioners
OSB No. 93232

5 – PETITION FOR ORDER CONFIRMING FOREIGN
ARBITRAL AWARD

CHEN, MU & ASSOCIATES
1000 SW Broadway, Suite 2150
Portland, Oregon 97205
(503) 222-3384 ● FAX (503) 222-7779

# 中国国际经济贸易仲裁委员会
## CHINA INTERNATIONAL ECONOMIC AND TRADE
## ARBITRATION COMMISSION

| | |
|---|---|
| 地址：中国北京朝阳区亮马桥路 32 号高澜大厦六层<br>邮编：100016<br>电话：(86-10)64646688<br>传真：(86-10)64643500,64643520<br>电子信箱：CIETAC@PUBLIC.BTA.NET.CN | Add: 6/F, Golden Land Building, 32 Liang Ma Qiao Road,<br>　　　Chaoyang District, Beijing 100016, P. R. China<br>Tel: (86-10)64646688<br>Fax: (86-10)64643500,64643520<br>E-mail:CIETAC@PUBLIC.BTA.NET.CN |

(2002) 贸仲字第 001144 号

### X20010111 号引进重铬酸钠技术软件及设备合同争议案
### 裁决书

申 请 人：中国化工建设重庆公司
申 请 人：重庆农药化工（集团）有限公司
仲裁代理人：张弘、谭华
被申请人：美国国际庄明企业公司
被申请人：北京庄明斯达电子系统有限公司
被申请人：美国庄明技术公司
被申请人：龚杰（Mr. Kit Kung）
仲裁代理人：桑红华

　　随函分别向申请人寄去仲裁庭于 2002 年 3 月 11 日就题述仲裁案作出的（2002）贸仲裁字第 0042 号裁决书一式二份，向被申请人寄去上述裁决书一式四份，请查收，并请遵照执行。



附件：如文

# 中国国际经济贸易仲裁委员会裁决书

第一申请人：中国化工建设重庆公司

地　　　址：中国重庆市渝北区红石路 36 号

第二申请人：重庆农药化工（集团）有限公司

地　　　址：中国重庆市沙坪坝区井口镇

仲裁代理人：张弘、谭华

第一被申请人：美国国际庄明企业公司 (The Brighton Industries Corp.)

地　　　址：6 Pearl Court, Allendale, New Jersey, 07401, USA

第二被申请人：北京庄明斯达电子系统有限公司

地　　　址：北京市朝阳区光华路 7 号汉威大厦三层 B8

第三被申请人：美国庄明技术公司 (The Brighton Technologies Corp.)

地　　　址：6 Pearl Court, Allendale, New Jersey, 07401, USA

第四被申请人：龚杰（ Mr. kit kung ）

地　　　址：6 Pearl Court, Allendale, New Jersey, 07401, USA

仲裁代理人：　桑红华

北　京

2002 年 3 月 11 日

# 裁　决　书

（2002）贸仲裁字第 0042 号

　　中国国际经济贸易仲裁委员会(原名中国国际贸易促进委员会对外贸易仲裁委员会,后改名为中国国际贸易促进委员会对外经济贸易仲裁委员会,后又改为现名,以下简称仲裁委员会)根据第一申请人中国化工重庆公司、第二申请人重庆农药化工（集团）有限公司与第一被申请人美国国际庄明企业公司（The Brighton Industries Corporation）于 1994 年 4 月 15 日签订的 94HNXH/3901U.S.号《中国重庆东风化工厂引进美国年产 2 万吨重铬酸钠技术软件及设备合同》中的仲裁条款和申请人于 2001 年 3 月 5 日提交的落款日期为 2001 年 2 月 27 日的、分别以美国国际庄明企业公司（The Brighton Industries Corporation）为第一被申请人、北京庄明斯达电子系统有限公司为第二被申请人、美国庄明技术公司（Brighton Technologies Corporation）为第三被申请人、龚杰（ Mr. kit kung）为第四被申请人的仲裁申请书，以及申请人于 2001 年 3 月 26 日提交的落款日期为 2001 年 3 月 23 日的《关于 94HNXH/3901U.S.合同书中仲裁条款对本案第二申请人有约束力的情况说明》、落款日期同为 2001 年 3 月 9 日的分别关于本案仲裁条款为何约束第一被申请人和第二、三、四被申请人的两份情况说明以及上述说明所提及的补充协议、还款协议书和《股票质押还款承诺书》，于 2001 年 4 月 12 日受理本案。本案编号为 X20010111。

　　本案程序适用仲裁委员会 2000 年 10 月 1 日起实施的《中国国际经济贸易仲裁委员仲裁规则》（以下简称仲裁规则）。

　　2001 年 4 月 12 日，仲裁委员会秘书局分别以（2001）贸仲字第 001754 号函和（2001）贸仲字第 001755 号函向申请人和被申请人发送了本案仲裁通知，并提请被申请人在仲裁规则规定的期限内提交书

1

面答辩或反请求,同时向被申请人附具了申请人提交的仲裁申请书及
其附件材料、仲裁规则和仲裁委员会仲裁员名册。

被申请人于 2001 年 5 月 16 日提交了书面答辩状。仲裁委员会秘
书局将此文件转送申请人。

申请人共同选定王晨光先生担任本案仲裁员,被申请人共同选定
曹家瑞先生担任本案仲裁员;由于双方未能在仲裁规则规定期限内共
同选定或共同委托仲裁委员会主任指定首席仲裁员,仲裁委员会主任
根据仲裁规则第二十四条之规定指定陈敏先生担任本案首席仲裁员。
上述三位仲裁员于 2001 年 6 月 11 日共同组成仲裁庭,审理本案。

2001 年 9 月 4 日,仲裁庭在北京对本案进行了开庭审理。双方
当事人均委派仲裁代理人出席了庭审,就本案涉及的主要问题及各自
对本案的看法进行了口头陈述、举证、相互辩论与质证,并回答了仲
裁庭提出的问题。

庭后,被申请人在仲裁庭规定的期限内提交了庭后补充材料。但
是,由于申请人在仲裁庭规定的期限内未能足份提交庭后补充材料,
仲裁委员会秘书局于 2001 年 10 月 10 日以(2001)贸仲字第 004738
号函通知申请人,依仲裁庭决定,请申请人限期足份提交补充材料,
逾期不提交,仲裁庭将对所提交的上述全部补充材料不予接受。此后,
申请人未能在仲裁庭规定的期限内足份提交补充材料。

2001 年 10 月 31 日,仲裁委员会秘书局以(2001)贸仲字第 004733
号函将被申请人提交的庭后补充材料转送申请人,同时根据仲裁规则
的规定,通知申请人,由于申请人在仲裁庭规定的期限内未能足份提
交庭后补充材料,仲裁庭不予接受申请人已提交的部分补充材料。

随后于 2001 年 11 月 6 日,申请人足份补交了补充材料。仲裁委
员会秘书局于 2001 年 11 月 8 日将申请人提交的该等补充材料转送被
申请人。仲裁委员会于 2001 年 11 月 27 日收到被申请人的函件,被
申请人以申请人提交材料超过规定期限为由拒绝对申请人的仲裁代
理词进行答辩并要求仲裁庭不予采纳申请人的代理意见。仲裁委员会

秘书局又以（2001）贸仲字第 005859 号函将此函件转送申请人。对此，申请人于 2001 年 12 月 7 日提交了落款日期为 2001 年 12 月 6 日的异议书，要求仲裁庭"本着客观、有利于平等保护双方诉权、不影响仲裁程序正常进行以及有利于收集证据和查清事实等原则和规则处理"。仲裁委员会秘书局于 2001 年 12 月 18 日将此"异议书"转送被申请人。

至此，双方当事人均未提交任何书面文件。

本案现已审理终结。根据仲裁规则第五十三条的规定，仲裁庭根据现有的双方提交的书面材料与开庭审理的情况，经合议作出本案裁决。

现将本案案情、仲裁庭意见和裁决分述如下：

## 一、案　情

1994 年 4 月 15 日，第一申请人在第二申请人的委托下，与第一被申请人签订了合同号为 "94HNXH/3901U.S." 的《引进美国年产 20,000 吨重铬酸钠技术软件及设备合同》（以下简称本案合同），双方约定：

1、供货与服务内容为：关键设备、技术转让与技术服务；

2、合同估算总价为：技术转让费与设计费：478.5 美元；技术服务费：21.45 万美元、美制关键设备估算价：600.05 万美元，最终设备采购费将以设备采购订单为准。

其中，贷款系申请人向美国进出口银行申请的贷款，并由中国建设银行提供担保，经国家外汇管理局备案登记（外汇贷款登记证号：No.9410214129001、No.9410214129002）的外债。

随后双方当事人又分别签订了以下文件：

1、1994 年 5 月 19 日备忘录（以下简称备忘录）；

2、1996 年 8 月 15 日《94HNXH/3901 合同补充协议》（以下简称补充协议），约定原则上只购本案合同的关键设备，其余设备均在国内制造或购买，同时双方估算并拟在美采购设备约 360 万美元；

3、1996 年 11 月 21 日备忘录，约定被申请人向申请人支付人民币货款，以便申请人在国内采购设备，并且双方对申请人多付出的外汇货款想办法用于国内企业采购美国设备；

4、1997 年 5 月 9 日三方协议补充，对上述备忘录进行了约定；

5、1997 年 6 月 28 日补充协议，主要是关于付款方式的约定；

6、1998 年 7 月 9 日《关于重庆农化（集团）公司 2 万吨红矾钠项目使用美国出口信贷剩余款项处理方案的协议》（以下简称余款处理协议），确认申请人存于被申请人银行帐上本案合同项下余款合计为 2,458,776.15 美元。

基于上述诸合同，双方当事人又于 1999 年 11 月 1 日进一步签订了《还款协议书》（以下简称还款协议书），在该协议书中，再次确认第一被申请人尚欠申请人余款本金 245 万美元。同时，本案第二、三被申请人承诺对第一被申请人偿还上述欠款提供担保，承担于 2000 年 6 月 30 日前归还还款协议书项下的全部欠款本金和约定利息的连带保证责任，并且本案第四被申请人还向申请人出具了《股票质押还款承诺书》（以下简称还款承诺书），承诺用其个人拥有的美国庄明技术公司的个人股票作质押，担保第一被申请人偿还上述欠款。

此后，在履行上述还款协议书的过程中双方发生纠纷，未能协商解决，申请人遂向仲裁委员会申请仲裁并诉称：

被申请时至今日仍拒不归还上述欠款，亦未全面履行担保合同义务，其一再违约的行为，给申请人造成了严重的经济损失。根据《中华人民共和国合同法》第 107、113 条的规定，要求第一被申请人偿还欠款本息、支付税款以及赔偿因此给申请人造成的损失，同时，第二、三、四被申请人承担相应的连带责任。

4

基于上述，申请人提出以下仲裁请求：

1、第一被申请人立即偿还欠款 245 万美元及逾期付款之利息；

2、第一被申请人立即支付技术转让费所得税款 3，976，095.75 元人民币；

3、第二、三、四被申请人承担上述第 1、2 项下的连带还款和付款责任；

4、被申请人承担仲裁费和仲裁庭开支的其他费用；

5、被申请人赔偿申请人为办理本案支出的差旅费、律师费和其他经济损失共计 105 万元人民币。

申请人提出上述仲裁申请之时，附具了以下证据：本案合同、备忘录、补充协议、余款处理协议书、还款协议书、还款承诺书等，上述证据均有双方当事人授权代表的签名。

在开庭审理时，申请人对其前述仲裁请求第 1、2 项进一步明确如下：

1、被申请人偿还申请人本案合同项下的所欠款项本息合计 3,067,356.80 美元，其中本金 2,420,532.14 美元，利息 646824.66 美元（截止算至 2001 年 8 月 31 日）；

2、被申请人支付申请人代缴技术转让费和设计费所得税款 3,971,550.00 元人民币及 2001 年 8 月 29 日起发生的全部滞纳金 7,943.10 元人民币（按日扣缴，加收税款 2‰）。

针对申请人的仲裁申请，被申请人在其落款日期为 2001 年 5 月 16 日的答辩书中反驳如下：

1、关于 245 万美元，申请人没有提供证据以证明该债务的存在。根据本案合同，被申请人已完全履行了自己的义务，即交付全部设备、提供约定的技术服务。申请人就本案合同项下的所谓欠款，没有提供任何财务依据，无法证明其没有收到合同约定的全部或部分设备，也无法证明被申请人尚有借款在其帐上。也即，申请人没有向仲裁庭提

5

供关于 245 万美元本息的债务形成的任何证据。

2、关于申请人提起仲裁所依据的还款协议书，因违反关于外债的法律规定，应属无效。根据本案合同总则关于"合同所列费用由卖方代表买方向美国进出口银行申请贷款"与合同第 11 条第 1 款关于"合同生效以美国进出口银行贷款协议签字之日为生效日期"的规定，本案合同项下 1,100 万美元系申请人向美国进出口银行申请的贷款，并且该贷款由中国建设银行提供担保，经国家外汇管理局备案登记的外债。根据中国《外债统计监测实施细则》等法律规定，该笔款项的用途在外债申报中为履行本案合同项下之付款义务。因此，被申请人与申请人均无权在未经国家外汇管理部门批准的情况下擅自改变该贷款的用途，更无权将此贷款的一部分转换为人民币现金。而申请人据以请求的 245 万美元本息所依据的还款协议书正是违反有关外债之法律规定签署的协议，此协议违反我国法律应属无效。

3、关于税款问题，申请人亦没有提供证据证明该款项的存在。申请人提出此项请求的依据为本案备忘录，即由申请人代被申请人缴纳该笔款项的约定。故申请人的请求权应来源于其实际已缴付该税款，但申请人并未提交其实际缴付税款的证明。

4、第二、三、四被申请人不应承担担保责任。如上所述，还款协议书系无效合同，故根据《担保法》的规定，第二、三、四被申请人的担保也无效，不应承担任何担保责任。

## 二、仲裁庭意见

### （一）关于本案合同适用的法律

根据本案合同第 10.4 条的规定，本案合同适用中华人民共和国法律。

### （二）关于申请人未能足份提交庭后补充材料的问题

　　根据仲裁规则第 20 条的规定，由于本案的申请人为 2 人，被申请人为 4 人，申请人提交的书面材料应为一式八份。经查，申请人在庭后只提交了一式五份补充材料，虽经仲裁庭通过秘书局一再要求申请人补交并明确告知其法律后果，申请人仍然没有在规定期限内足份提交上述补充材料。对此，仲裁庭认为，申请人的作法违反了仲裁规则，并且被申请人对此明确表示异议，因此，仲裁庭对其提交的庭后补充材料不予采纳。但是当事人在开庭审理时的陈述不受未按时补交材料的影响。

　　（三）关于"还款协议书"的效力

　　这是本案争议的焦点。

　　"还款协议书"是由本案的两个申请人作为甲方，本案的第一被申请人作为乙方和本案的第二、第三被申请人作为丙方于 1999 年 11 月 1 日在北京签订的，确定存在"乙方"银行帐上的本案合同余款 245 万美元在 1999 年 12 月 31 日前和 2000 年 6 月 30 日前分两次各 50%归还甲方。被申请人认为"还款协议书"完全违反中华人民共和国关于外债管理的法律规定，应属无效。申请人则说，"还款协议书"以及由本案第四被申请人出具的"股票质押还款承诺书"都是依据申请人与第一被申请人之间本案合同的"补充协议"而订立的。所称本案合同的"补充协议"，其全名是"94HNXH/3901 合同补充协议"签订于 1996 年 8 月 15 日，本案的两个申请人同本案的第一被申请人约定"……对合同购买内容作如下修改：对采购美国制造设备部分，原则上只购买红钒钠合同中提到的关键设备，其余设备在中国国内制造或购买。经双方估算，拟向美国采购的设备金额约美元 360 万。……"经查，本案合同总价是 1100 万美元，其中设备购买款为 600 万零 500 美元。"补充协议"事实上是对本案合同作了实质性的修改，从价款金额上说，减少了 240 万美元。依据《中华人民共和国技术引进合同管理条例》，本案合同属于技术引进合同，应经中国政府审查批准，本案合同第 11.1 条也规定本案合同应经中国政府批准后生效。　按照《中华人民共和国技术引进合同管理条例》及其实施

细则的规定，技术引进合同的修改应经原审、〔关批准。那么，"94HNXH/3901 合同补充协议"是否经过中国政府的原审批机关的审查批准呢？ 在 2001 年 9 月 4 日庭审时，申请人在庭上口头明确表示：无需报批！

仲裁庭认为，申请人的上述说法缺乏法律根据，本庭不予采纳。

根据《中华人民共和国技术引进合同管理条例》及其实施细则的规定，"补充协议"对本案合同的标的、价款的修改属于对合同的重大变更，应当经原审批机关批准。因此，根据《涉外经济合同法》第33 条以及最高人民法院关于适用《涉外经济合同法》若干问题的解答第三条的规定，重大变更未经原审批机关批准的，应当确认无效。

两个申请人同第一被申请人达成了修改本案合同的"补充协议"却不向中国的政府的原审批机关申报和请求批准，却仍旧以未修改的合同的价款金额从美国进出口银行取得贷款，而且向第一被申请人作出了超过实收货物价款的支付，应认为是有违于申请人同中国建设银行之间的贷款协议、中国建设银行同美国进出口银行的贷款协议的，而且也是违反中国的外债管理的各项有关规定的。 被申请人事实上对申请人的作为是配合的，有着通同作弊之嫌。但是，上述这些问题，已经超出了本案的审理范围，仲裁庭不予审理。

至于"还款协议书"，仲裁庭认为，由于 4 个被申请人都没有成为贷款的任一当事方，应同贷款事项没有必然的因果联系。事实上，不论款项是否来自贷款，第一被申请人收取的是合同价款。第一被申请人银行帐上所存有的款项，只能是本案合同的价款而不是美国进出口银行的贷款，因为第一被申请人收取的款项虽然来自美国进出口银行的贷款，但第一被申请人并不因此对美国进出口银行承担贷款的债务。 "还款协议书"所约定的是第一被申请人应当归还剩余的合同价款，同申请人向美国进出口银行贷款无直接关系。被申请人认为"还款协议书"完全违反中华人民共和国关于外债管理的法律规定，应属无效的主张不合逻辑，不能成立。

由于本案合同规定，对设备的购买以订单为准，申请人并没有说

8

尚有订单没有发出，被申请人也没有说尚有合同设备在等待订单，这就是说双方都认为本案合同已经执行完了，红钒钠项目已不需要其它进口设备，所以存在第一被申请人银行帐上的款项，只能是多余的合同价款。 被申请人提出，由于本案合同的"补充协议"未经审批而无效，申请人仍应以现存第一被申请人银行帐上的款项继续购买美国设备。 被申请人的这一主张是错误的，因为，作为美国进出口银行提供的出口信贷，是不能任意是用于购买贷款对应项目之外的设备的。 既然是多余的合同价款金额，理所当然应返还给申请人。

（四）关于担保条款以及质押合同的效力问题。

对此，仲裁庭认为：第二、三、四被申请人虽非本案合同的当事人，但是申请人与四个被申请人签订的还款协议书是对本案合同履行完毕后就剩余款项的返还所达成的协议。仲裁庭已经认定合同的剩余价款款项应由第一被申请人退还给申请人，事实上就是认可了"还款协议书"的效力，第二、三、四被申请人既然在"还款协议书"上签了字或以其它方式对此事做出了承诺，那么对各被申请人都是有约束力的。

仲裁庭还注意到：根据双方当事人在还款协议书中的约定，本案第二、三被申请人对第一被申请人偿还欠款承担于 2000 年 6 月 30 日前归还全部欠款本金和约定利息的连带保证责任；第四被申请人则向申请人出具了《股票质押还款承诺书》，承诺用其个人拥有的美国庄明技术公司的个人股票作质押，担保第一被申请人偿还上述欠款。因此，根据《担保法》第 12 条、第 21 条的规定，自第一被申请人在约定的履行期限届满仍不偿还欠款之日起，第二、三、四申请人即应当承担相应的偿还欠款与其他费用的责任。

（五）关于申请人的仲裁请求

1、关于本案合同项下余款本金 2,420,532.14 美元及利息（截止 2001 年 8 月 31 日）646,824.66 美元

依据以上第（三）节的审理意见，仲裁庭已经认定剩余的合同价

9

款款项应予归还，因此支持申请人的这一请求，被申请人应当返还申请人本案合同项下的全部余款本金 2,420,532.14 美元及利息（截止 2001 年 8 月 31 日）646,824.66 美元。

2、关于技术转让费和设计费所得税款 3,971,550 元人民币与 2001 年 8 月 29 日起发生的全部滞纳金 7,943.10 元人民币

根据本案合同 8.3 条的约定，申请人代为扣缴的技术转让费和设计费所得税款应当由被申请人承担。同时，根据我国《外商投资企业和外国企业所得税法》第 22 条关于"纳税义务人未按规定期限缴纳税款的，或者代缴义务人未按规定期限解缴税款的。税务机关除限期缴纳外，从滞纳税款之日起，按日加收滞纳税款 2‰的滞纳金"的规定，仲裁庭认定，从 2001 年 8 月 29 日起发生的全部滞纳金，即 3,971,550 元人民币 × 2‰=7,943.1 元人民币亦应当由被申请人承担。因此，仲裁庭支持申请人的这项请求。

3、关于第二、三、四被申请人承担连带偿还上述欠款和付款的责任

如上所述，仲裁庭认定，第二、三、四被申请人应当连带承担与第一被申请人相同的偿还上述欠款和付款的责任，仲裁庭支持申请人的这一请求。

4、关于第二申请人为追偿本案债务发生的经济损失 105 万元人民币

由于申请人未能提交足够的证据以证明该项损失的存在，因此，仲裁庭对申请人的该项请求不予支持。

（六）关于本案仲裁费

本案仲裁费由申请人承担 10%，由被申请人承担 90%。

三、裁决

1、被申请人偿还申请人余款本金 2,420,532.14 美元及利息（截止 2001 年 8 月 31 日）646,824.66 美元，以上本息合计 3,067,356.80 美元；

2、被申请人向申请人支付技术转让费和设计费所得税款 3,971,550.00 元人民币与 2001 年 8 月 29 日起发生的全部滞纳金 7,943.10 元人民币；

3、本案第一、二、三、四被申请人就上述款项的偿还互相承担连带付款责任；

4、本案仲裁费 436,314.00 元人民币，分别由申请人承担 10%，即 43,631.40 元人民币，由被申请人承担 90%，即 392,682.60 元人民币被申请人承担。鉴于本案仲裁费已由申请人预交的款项 436,314.00 元人民币冲抵。因此，被申请人应当向申请人支付人民币 392,682.60 元，以补偿申请人代其垫付的仲裁费。

5、被申请人应向申请人支付的上述各款项，应于本裁决送达之日起 45 日内支付完毕；逾期，并计年利率为 6%的利息；

6、驳回申请人的其他请求。

本裁决为终局裁决。



首席仲裁员：陈敏

仲　裁　员：王晨光

仲　裁　员：曹家瑞

2002 年 3 月 11 日于北京

# CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

**Add**:    6/F, Golden Land Building, 32 Liang Ma Qiao Road, Chaoyang District, Beijing 100016, P.R. China
**Tel**:    (86-10) 6466688
**Fax**:    (86-10) 64643500
**E-mail**: CIETAC@PUBLIC.BTA.NET.CN

## (2002) Arbitration Award No. 001144

## The Arbitration Award with regard to the dispute arising from X20010111—importation of sodium bichromate technological software and equipment contract

Petitioner:  China National Chemical Construction Chongqing Co.
Petitioner:  Chongqing Pesticide Chemoindustry (Group) Corporation
Arbitration Agents for the Petitioners:  Homg Ghang and Hua Tan

Respondent:  The Brighton Industries Corporation
Respondent:  Beijing Brighton Electronic System Limited
Respondent:  Brighton Technologies Corporation
Respondent: Mr. Kit Kung
Arbitration Agent for Respondents:  Honghua San

The tribunal delivered its attached award on March 11, 2002 with regard to (2002) arbitration case number 0042.

Two originals of said award are sent to the petitioners.  Four originals are sent to the respondents.  Please follow the award accordingly.

March 11, 2002
Seal of Secretary Bureau of CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

Enclosure

# ARBITRATION AWARD OF CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

First Petitioner:  China National Chemical Construction Chongqing Co.
Address:   NO. 36 Hongshi Road YU BEI DISTRICT CHONGQING, CHINA

Second Petitioner:  Chongqing Pesticide Chemoindustry (Group) Corporation
Address:  NO 30 Jing Ji Qiao Jing Kou Zhen Sha Ping Ba District Chongqing, China

Arbitration Agents for the Petitioners:  Homg Ghang and Hua Tan


First Respondent:  The Brighton Industries Corporation
Address: 6 Pearl Court, Allendale, New Jersey, 07401, USA

Second Respondent:  Beijing Brighton Electronic System Limited
Address:  B8,3rd fl, Hanwei Building, 7 Ganhua Rd, Chongyang District, Beijing

Third Respondent:  Brighton Technologies Corporation
Address: 6 Pearl Court, Allendale, New Jersey, 07401, USA

Fourth Respondent: Mr. Kit Kung
Address: 6 Pearl Court, Allendale, New Jersey, 07401, USA

Arbitration Agent for Respondents:  Honghua San


Beijing
March 11, 2002

# ARBITRATION AWARD

(2002) Trade Arbitration No. 0042

CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION (It was originally called Foreign Trade Arbitration Commission of Chinese International Trade Promotion Commission. It was then renamed as Foreign Economic Trade Arbitration Commission of Chinese International Trade Promotion Commission. Hereinafter called the Arbitration Commission.) accepted the instant case on April 12, 2001. The case number is X200100111. The instant case is based on the arbitration clause in the contract 94HNXH/3901U.S. "20000 MT/Y SODIUM BICHROMATE PRODUCTION PLANT IMPORTATION OF TECHNOLOGY & EQUIPMENT FROM THE UNITED STATES FOR CHONGQING DONGFENG CHEMICAL PLANT " signed on April 15, 1994 between the first Petitioner and the second Petitioner and first Respondent, the U.S. Brighton Industries Corporation. The instant case is also based on the arbitration petition against the first Respondent, U.S. Brighton Industries Corporation, the second Petitioner, Beijing Brighton Electronic System Limited, the third Respondent, Brighton Technologies Corporation, and forth Respondent, Mr. Kit Kung. The arbitration petition was signed on February 27, 2001 and filed on March 5, 2001. The arbitration is also based on "the statement explaining why the arbitration clause in the contract of 94HNXH/3901U.S is binding on the second Respondent, which was signed on March 23, 2001 and filed on March 26, 2001. The arbitration is also based on the two statements signed on March 9, 2001 explaining why the arbitration clause is binding on the first, second, third, and forth Respondents together with supplementary agreement, refund agreement, and the promissory note using stock as collateral.

This arbitration procedure is controlled by "The Arbitration Rules of CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION" effective on October 1, 2000 (hereinafter called Arbitration Rules).

On April 12, 2001, the Secretarial Bureau of the Arbitration Commission sent Arbitration Notices to the Petitioners and Respondents. The notice numbered 001754 (2001) was sent to the Petitioner, and the notice numbered 001755 (2001) was sent to the Respondents. The notice sent to the Respondents advised the Respondents to provide their written answers and counterclaims within the time provided under Arbitration Rules. The notice to the Respondents also attached the Arbitration Petition and its supporting documents provided by the Petitioners, the Arbitration Rules, and the Arbitrator List of the Arbitration Commission.

1

The Respondents submitted their written answers on May 16, 2001. The Secretarial Bureau of the Arbitration Commission forwarded the answers to the Petitioners.

The Petitioners elected Mr. Cheng Guang Wang as their arbitrator, and the Respondents elected Mr. Jiang Rui Cao as their arbitrator. Since the two parties did not appoint a chief arbitrator within the required time period under the Arbitration Rules, the director of the Arbitration Commission appointed Mr. Meng Chen as chief arbitrator according to Article 24 of the Arbitration Rules. The three arbitrators formed the tribunal on June 11, 2001 and started hearing the case.

On September 4, 2001, the tribunal held a hearing in Beijing. Both parties were represented by their arbitration agents. The agents conducted oral arguments, submitted evidence, debated with each other, and also answered the questions raised by the tribunal.

After the hearing, the Respondents submitted supplemental documents within the time set forth by the tribunal. However, the Petitioners did not submit sufficient copies of the supplemental documents within the time set forth by the tribunal. Therefore, on October 10, 2001, the Secretarial Bureau of the Arbitration Commission sent a notice numbered 004738 (2001) to the Petitioners. The notice advised the Petitioners to provide sufficient copies of the supplemental documents, and it informed the Petitioners that if sufficient copies were not provided in time, the tribunal would not accept the supplemental documents. However, the Petitioners did not provide sufficient copies of the supplemental documents within the time set forth by the tribunal.

On October 31, 2001, the Secretarial Bureau of the Arbitration Commission forwarded to the Petitioners, in the notice numbered 004733 (2001), the supplemental documents submitted by the Respondents. The notice also informed the Petitioners again that since the Petitioners did not provide sufficient copies of supplemental documents within the time set forth by the tribunal, that, under the Arbitration Rules, the tribunal would not accept the supplemental documents already submitted by the Petitioners.

Subsequently, on November 6, 2001, the Petitioners submitted sufficient copies of the supplemental documents. The Secretarial Bureau of the Arbitration Commission forwarded said supplemental documents to the Respondents on November 8, 2001. On November 27, 2001, the tribunal received a letter from the Respondents. In their letter, the Respondents stated that they would not respond to the Petitioners' arbitration argument because the Petitioners had not submitted documents within the time allowed. The letter also requested the tribunal to ignore the Petitioners' arguments. The Secretarial Bureau of the Arbitration Commission forwarded this letter to the Petitioners in the notice numbered 005859 (2001). In response, on December 7, 2001, the Petitioners

submitted an objection dated December 6, 2001, requesting the tribunal "to conduct the hearing on the principles of maintaining objectivity, providing equal protection to both parties, maintaining the normal arbitration procedure, collecting evidence fully, and investigating all facts." Then on December 18, 2001 the Secretarial Bureau of the Arbitration Commission forwarded this "objection" to the Respondents.

After that, neither party submitted further written documents.

The tribunal has completed its review of the case. In accordance with Article 53 of the Arbitration Rules, the tribunal delivers its award after discussion based on the written documents submitted by the two parties and after oral arguments.

The facts, the tribunal's findings, and award are as follows;

## I.    Facts

On April 15, 1994, the first Petitioner, authorized by the second Petitioner, entered into a contract of "94HNXH/3901U.S", namely, "20000 MT/Y SODIUM BICHROMATE PRODUCTION PLANT IMPORTATION OF TECHNOLOGY & EQUIPMENT FROM THE UNITED STATES FOR CHONGQING DONGFENG CHEMICAL PLANT " (hereafter called the Contract) with the first Respondent. The two parties agreed as follows;

1. The goods and service: key equipment, technology transfer and technology service; and
2. The estimated total price of the Contract: technology transfer fee and design fee of $4,785,000[1]; technology service fee of $214,500; the U.S. manufactured key equipment estimated price of $6,000,500. The final equipment fee will be decided by the equipment purchase order.

According to the Contract, the Petitioners will apply loans from the American Import and Export Bank to be guaranteed by the Chinese Construction Bank and to be registered with the Chinese National Foreign Currency Management Administration (foreign currency loan registration numbers: No. 9410214129001 and No. 9410214129002).

After that, the parties also signed the following documents:

1. The memorandum dated May 19, 1994 (hereinafter called the Memorandum).

---

[1] Translator's note: The Chinese words here say $478.50, and this is a typographical error. The total contract price is $11,000,000. The number of $4,785,000 makes sense here. In addition, the translator has contacted the Petitioners' attorney and confirm that this is a typographical error.

2. "94HNXH/3901U.S. supplementary agreement" dated August 15, 1996 (hereinafter called Supplementary Agreement).  Under the Supplementary Agreement, the parties agreed that only the key equipment would be purchased in the U.S. and that the remaining equipment would be manufactured or purchased in China.  The parties estimated that the equipment to be purchased in the U.S. would cost around $3,600,000.

3. The memorandum dated November 21, 1996.  The parties agreed that the first Respondent would loan Chinese Yuan to the Petitioners so that the Petitioners would purchase the equipment in China.  The parties also agreed that extra foreign currency provided by the Petitioner's loan would be used to buy the U.S. equipment for other Chinese enterprises.

4. On May 9, 1997, the three parties signed another agreement with regard to the above mentioned memorandum.

5. Another supplementary agreement dated June 28, 1997 with regard to the terms of payment.

6. The agreement with regard to the balance from the American Export loan used by the 20,000 ton sodium bichromate project by Chongqing Agriculture and Chemical Group dated July 9, 1998 (hereinafter called the Balance Agreement).  The Balance Agreement confirms that the first Respondent had a balance of $2,458,776.15.

Based on above agreements, the parties signed another agreement called a refund agreement (hereinafter called Refund Agreement) on November 1, 1999.  In the Refund Agreement, it was again affirmed that the first Respondent owed the Petitioners the balance of $2.45 million.  In addition, the second Respondent and the third Respondent promised to provide a guarantee to the balance owed by the first Respondent.  They undertook the joint and several guarantee liability to return all of the balance and its interest before June 30, 2000.  The forth Respondent also issued a promissory note using stock as collateral (hereinafter called Promissory Note) to the Petitioners.  The forth Respondent promised that he would use his own stock of Brighton Technologies Corp. as collateral and would guarantee that the first Respondent would return the balance.

After that, a dispute arose in the process of performing the above mentioned agreements.  The Petitioners thus filed a petition with the Arbitration Commission and alleged as follows:

"The Respondents have not returned the balance as demanded, and they have not performed their duties under the guarantee agreement.  Their repeated breaches have caused serious economic damages to the Petitioners.  In accordance with Article 107 and Article 113 of the 'contract law of the Peoples' Republic of China,' the first Respondent should compensate the Petitioners for their loss arising from the first Respondent's failure to return the principle and

interest.  In addition, the second, third, and forth Respondents should be held joint and severally liable."

Based on the above allegations, the Petitioners make the following claims:

1.  The first Respondent should return $2.45 million and its unpaid interest;
2.  The first Respondent should pay the income tax for technology transfer fee in the amount of 3,976,095.75 Chinese Yuan.
3.  The second, third, and forth Respondents should be jointly and severally liable to return the funds as alleged under claim one and claim two.
4.  The Respondents should incur all the costs associated with arbitration.
5.  The Respondents should pay the travel fees, attorney fees, and other related fees in the amount of 1.05 million Chinese Yuan incurred by the Petitioners.

In support of their above mentioned claims, the Petitioners attached the following evidence, the Contract, the Memorandum, the Supplementary Agreement, the Balance Agreement, the Refund Agreement, the Promissory Note, etc.  All the documents bare the signatures of authorized agents.

In the oral argument the Petitioners clarified their claim one and claim two as follows:

1.  The total amount owed by the Respondents to the Petitioners is $3,067,356.80 including principle of $2,420,532.14 and interest of $646,824.66 (calculated as of August 31, 2001); and
2.  The total amount of income tax for technology transfer and design paid by the Petitioners for Respondents is 3,971,550.00 Chinese Yuan, and the late fee of 7,943.10 Chinese Yuan incurred after August 29, 2001 (the late fee calculated daily and a tax of 0.2% added).

In response to the Petitioner's arbitration claims, the Respondents filed their answer on May 16, 2001 and rebutted as follows:

1.  With regard to $2.45 million, the Respondents argued that the Petitioners did not provide sufficient evidence to prove its existence.  According to the Contract, the Respondents have performed all their duties.  Namely, they have provided all equipment and all technology service.  The Petitioners have not provided any financial evidence of the balance under the Contract, and the Petitioners did not prove that they did not receive the equipment as agreed under the Contract.  The Petitioners did not prove that the Respondents still have the balance in their accounts.  Namely, the Petitioners have not provided any evidence to the tribunal as to how the $2.45 million debt was formed.
2.  The Refund Agreement relied on by the Petitioners in their arbitration is void, because it is in violation of the legal requirement with regard to

5

foreign debt.  The general section of the Contract provides that "the seller will represent the buyer to get a loan from American Import and Export Bank to pay the Contract price."  Article 11.1 provides "the Contract will be effective when the American Import and Export Bank loan agreement is effective."  The eleven million dollar loan borrowed by the Petitioners from the American Import and Export Bank is guaranteed by the Chinese Construction Bank and registered with the Chinese Foreign Currency Management Administration.  According to the Chinese "implementing rules with regard to foreign debt statistics and monitoring" and other legal provisions, this loan can only be used to perform the payment duty under the Contract.  Therefore, neither the Respondents nor the Petitioners have the power to change the usage of the loan without the rectification by the Chinese National Foreign Currency Management Administration.  No party has the power to convert a portion of such loan into Chinese Yuan.  Since the $2.45 million claimed by the Petitioners is based on the Refund Agreement, which is in violation of the Chinese law with regard to foreign debt, therefore the Refund Agreement is void.

3. With regard to the income tax; the Petitioners have not provided evidence to prove the existence of this amount.  The Petitioners' claim here is based on the Memorandum, which provides that the Petitioners will pay income tax for the Respondents.  The claim of the Petitioners here would arise from the tax dollars actually paid.  But the Petitioners have not provided evidence that they actually paid the income tax.

4. The second, third, and forth Respondents should not be jointly and severally liable.  As argued above, the Refund Agreement is a void contract.  Therefore, according to "the guarantee law," the guarantee promised by the second, third, and forth Respondents is also void.  They should not be held for any guarantee liability.

## II.    The Tribunal's Findings

### (1) The applicable law

According to Article 10.4 of the Contract, Chinese law is applicable.

### (2) The issue with regard to insufficient copies of the supplement documents provided by the Petitioners.

According to Article 20 of the Arbitration Rules, since there are two Petitioners and four Respondents, the Petitioners should provide eight copies of the written materials.  It is found that the Petitioners only provided five copies of the supplemental documents.  Despite repeated requests made to the Petitioners by the Secretarial Bureau and warnings about the legal consequences, the Petitioners still did not provide sufficient copies of the supplemental documents. Therefore, the tribunal is of the opinion that the Petitioners' behaviors violated the Arbitration Rules.  In addition, the Respondents raised objection to this practice.

Therefore, the tribunal will not accept the supplemental documents submitted by the Petitioners.  However, the tribunal will consider the Petitioner's oral arguments.

### (3)   The issue with regard to the validity of the "Refund Agreement."

This is the focus of the instant case.

The "Refund Agreement" was signed on November 1, 1999 in Beijing among party A of the two Petitioners, party B of this first Respondent, and party C of the second and third Respondents.  The Refund Agreement confirmed the existence of the balance of $2.45 million in the "party B's" bank account.  The Refund Agreement provides this amount should be refunded in two installments to the party A, 50% before December 31, 1999 and the second 50% before June 30, 2000.  The Respondent takes the position that the "Refund Agreement" is void, because it violates Chinese law with regard to foreign debt management.  On the contrary, the Petitioners argue that both the "Refund Agreement" and "Promissory Note" signed by the forth Respondent were made based on the "Supplementary Agreement," which was made between the Petitioners and the first Respondent.  The full name of the "Supplementary Agreement" is "94HNXH/3901 Contract Supplementary Agreement," signed on August 15, 1996.  The two Petitioners and the first Respondent agreed there that "the contract is amended as follows with regard to the purchase:  with regard to the purchase of U.S. made equipment, the parties agree only to purchase the key equipment mentioned in the sodium bichromate contract.  The remaining equipment will be made in China or be purchased in China.  The two parties estimate that the dollar amount to be spent in purchasing equipment in the U.S. will be about $3.6 million."  It is found that the original total contract price was eleven million U.S. dollars, including the equipment purchase money of $6,000,500.00.  The "Supplementary Agreement" in fact amended the Contract substantially in terms of the equipment purchase price.  It amended it so that the price was $2.4 million less.  The Contract in the instant case is controlled by "the implementing regulation with regard to technology import contract of the Peoples' Republic of China."  Therefore, it should be reviewed and rectified by the Chinese government.  In addition, Article 11.1 of the Contract in the instant case also provides that this Contract will be valid only upon the rectification by the Chinese government.  Therefore, the question is whether "94HNXH/3901 Contract Supplementary Agreement" should be reviewed and rectified by the Chinese government.  In the oral argument on September 4, 2001, the Petitioners argued before the tribunal clearly that Chinese government approval is not needed!

The tribunal is of the opinion that the Petitioner's argument lacks legal basis, and this tribunal will not adopt it.

According to "the implementing regulation with regard to technology import contract of the Peoples' Republic of China" and its rules, the "Supplementary Agreement" should be rectified by the original reviewing government agency, because it substantially amended the original Contract in terms of contract subject and contract price. Therefore, according to Article 33 of "foreign economic contract law," and the explanation notes issued by the Supreme Peoples' Court with regard to "the implementing regulation with regard to technology import contract of the Peoples' Republic of China," major modification of the contract without the rectification of the government agency should be considered void.

The two Petitioners and the first Respondent signed the "Supplementary Agreement" to amend the Contract without reporting to, and without seeking rectification from, the original Chinese government that approved the original Contract. At the same time, the parties secured and obtained a loan from the American Import and Export Bank with the original contract price and paid the first Respondent more than the actual price of the goods purchased. By doing this, the Petitioners breached their loan contract with the Chinese Construction Bank that had signed a loan agreement with the American Import and Export Bank. This is in violation of various provisions of Chinese law with regard to foreign debt management. In fact, the Respondents and the Petitioners appeared to be in collusion. However, those issues are beyond the arbitration scope, and the tribunal will not make any decision about them. With regard to the "Refund Agreement," the tribunal is of the opinion that, because the four Respondents are not one of the parties in securing the loan, therefore their actions have no causal link with loan affairs. In fact, regardless of whether the money comes from the loan or not, the money received by the first Respondent was the contract price. The money the first Respondent got in his bank account was the contract money arising from the Contract, not the money from the American Import and Export Bank. Although the money the first Respondent received came from the American Import and Export Bank, however the first Respondent did not undertake the duty to return the debt to the American Import and Export Bank. The "Refund Agreement" provides that the first Respondent should return the balance of the contract price. This has nothing to do with the loan obtained by the Petitioners from the American Import and Export Bank. Therefore, the Respondent's position that the "Refund Agreement" is void because it is in violation of Chinese law with regard to foreign debt management is illogical, and therefore it has no merits.

With regard to the issue that the equipment purchase should have been decided by the purchase order under the Contract, the Petitioners did not say that they were future orders, and the Respondents did not say that they were waiting for the future orders. This indicates that both parties had considered this contract to be fully performed. This sodium bichromate project does not need any other equipment to be imported. Therefore, the remaining funds in the first Respondent's bank account are only the balance of the contract price. The

Respondents argue that since the "Supplementary Agreement" is void without review and rectification, the Petitioners should use the balance in the first Respondent's bank account to continue purchasing American equipment.  The Respondent's argument is erroneous because the export loan provided by the American Import and Export Bank should not be used to buy any other equipment not specified in the Contract.  Since the balance comes from the contract price, it should be refunded to Petitioners accordingly

### (4)  The issue with regard to validity of the guarantee agreement and the Promissory Note.

The tribunal is of the opinion that although the second, third, and forth Respondents are not the parties of the purchase Contract, however the Petitioners and four Respondents signed the Refund Agreement, which is an agreement with regard to the balance of the contract price after the purchase contract had been performed.  The tribunal has already decided that the balance of the contract price should be refunded by the first Respondent to the Petitioners.  This finding holds that the Refund Agreement is valid.  Since the second, third, and forth Respondents signed the Refund Agreement, and undertook their responsibility, therefore the Refund Agreement should band all the Respondents.

The tribunal notices that, according to the provisions of the Refund Agreement, the second and the third Respondents undertook the joint and several liability for the first Respondent's duty to refund the balance principle and its interest before June 16, 2000.  The forth Respondent issued a document to the Petitioner promising that he would use all his stock in Brighton Technologies Corporation to guarantee that the first Respondent would refund the balance.  Therefore, in accordance to article 12 and article 21 of "the guarantee law," the second, third and forth Respondents should be held jointly and severally liable for all the debt for refunding the balance and other costs incurred by the first Respondent after the expiration date.

### (5)  The issue with regard to the Petitioner's claims

#### a.  With regard to the balance principle of $2,420,532.14 and its interest of $646,824.66 (calculated as of August 31, 2001)

Based on the tribunal's finding in section three, the tribunal is of the opinion that the balance of the contract price should be refunded.  Therefore, this claim of the Petitioners is upheld.  The Respondent should refund the balance principle of $2,420,532.14 and its interest of $646,824.66 (calculated as of August 31, 2001).

#### b.  The issue with regard to the income tax of technology transfer fee and design fee in the amount of 3,971,550

9

**Chinese Yuan and the late fee of 7,943.10 Chinese Yuan incurred since August 29, 2001.**

According to article 8.3 of the Contract, the Respondents are liable for the income tax of the technology transfer fee and design fee paid by the Petitioners. In addition, article 22 of the Chinese "income tax law with regard to foreign investment enterprises and foreign enterprises" provides "in case the tax payer does not pay the tax before the due date or in case the agent of the tax payer does not pay the tax before the due date, the tax agency shall order the tax to be paid immediately.  In addition, the tax payer should be fined a late fee of 0.2%, calculated daily, of the tax unpaid after the due date."  Therefore, the tribunal is of the opinion that all of the late fee incurred after August 29, 2001, in the amount of 3,971,550 Chinese Yuan x 0.2% = 7,943.10 Chinese Yuan, should be paid by the Respondents.  Therefore, the tribunal upholds this claim raised by the Petitioners.

> **c.  The issue of whether the second, third, and forth Respondents should be held jointly and severally liable for the above mentioned amounts**.

As discussed above, the tribunal is of the opinion that the second, third, and forth Respondents should be held jointly and severally liable with the first Respondent to pay the above mentioned amounts.  Therefore, the tribunal upholds this claim raised by the Petitioners.

> **d**.  **The issue with regard to the economic damages in the amount of 1.05 million Chinese Yuan incurred by the second Petitioner to pursue debt collection.**

Since the Petitioners have not provided sufficient evidence to prove the existence of these damages, therefore the tribunal declines this claim raised by the Petitioners.

**(6)    The arbitration fee.**

The Petitioners should incur ten percent of the arbitration fee of the instant case, and the Respondents should pay ninety percent of the arbitration fee.

## III.    Award

(1)    The Respondents should refund the balance principle of $2,420,532.14 and its interest of $646,824.66 (calculated as of August 31, 2001). The total amount including the principle and interest is $3,067,356.80.

(2)    The Respondents should pay to the Petitioners the income tax of the technology transfer fee and design fee in the amount of $3,971,550

Chinese Yuan and the late fee of 7,943.10 Chinese Yuan incurred since August 29, 2001.

(3)     The second, third, and forth Respondents should be held jointly and severally liable for all of the debt.

(4)     The Petitioners should pay the arbitration fee of 43,631.40, ten percent of the total arbitration fee of 436,314.00 Chinese Yuan.  The Respondents should pay 392,682.60, which is ninety percent of the total arbitration fee. Since the total arbitration fee in the amount of 436,314.00 Chinese Yuan has been paid in advance by the Petitioners, therefore the Respondents should pay to the Petitioners 392,682.60 Chinese Yuan.

(5)     The Respondents should pay all the above mentioned amounts within forty-five days after the award is received to the Petitioners, and annual interest of six percent will be calculated for any amounts not paid on time.

(6)     All the other claims raised by the Petitioners are denied.  This award is final.

Chief Arbtrator: Meng Chen
Arbitrator: Cheng Guang Wang
Arbitrator: Jiang Rui Cao

March 11, 2002, Beijing

# CERTIFICATE OF ACCURACY

STATE OF OREGON                    )
                                   )SS:
COUNTY OF MULTNOMAH                )


Baolin Chen, being duly sworn, deposes and says:


1.      That I am familiar with both the English and the Chinese languages;

2.      That I am an attorney authorized to practice in the state of Oregon; and

3.      That I have made the attached English translation from the attached Arbitration Award in the Chinese language and hereby certify that the same is a true and complete translation to the best of my knowledge, ability and belief.


                                   _____
                                   Baolin Chen


SUBSCRIBED AND SWORN to before me this _10th_ day of March 2005 at Multnomah County, Oregon.

                                   _____

OFFICIAL SEAL
JON STEVEN WAKELAND
NOTARY PUBLIC-OREGON
COMMISSION NO. 385415
MY COMMISSION EXPIRES OCTOBER 3, 2008

                                   Notary Public for Oregon
                                   My Commission Expires _10/3/08_